UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ST. PAUL FIRE AND MARINE INSURANCE
CO., a Minnesota corporation,

          Plaintiff,

          v.

RWR MANAGEMENT, INC., d/b/a R.W.
ROBIDEAUX & CO., a Washington
corporation; RWR-NORTHWEST, INC.,
a Washington corporation; CITY OF
SPOKANE, a Washinton municipal
corporation; and KEMPER CASUALTY
INSURANCE COMPANY, a Delaware
corporation,

          Defendants.

NO. CV-05-0294-EFS

**ORDER RULING ON MOTIONS
FOR SUMMARY JUDGMENT RE:
COVERAGE**

    A hearing was held in the above-captioned matter on October 19, 2006.  Plaintiff St. Paul Fire and Marine Insurance Co. ("St. Paul") was represented by Craig Bennion.  Laurel Siddoway appeared on behalf of Defendants RWR Management, Inc. (hereinafter, "Robideaux"), RWR-Northwest, Inc., and the City of Spokane ("the City"); while, Scott Sawyer appeared on behalf of Defendant Kemper Casualty Insurance Co. ("Kemper").  Before the Court were (1) St. Paul's Motion for Summary Judgment (Ct. Rec. 32), (2) Robideaux Defendant's Motion for Summary Judgment on Claims by and Against St. Paul (Ct. Rec. 49), and (3) Cross-

ORDER ~ 1

Defendant Kemper's Motion for Summary Judgment (Ct. Rec. 42).    After reading the submitted materials and relevant legal authority and hearing oral argument, the Court was fully informed; this Order serves to supplement and memorialize the Court's oral rulings denying in part and denying with leave to renew in part St. Paul's motion, granting in part and denying as moot in part Robideaux's motion, and granting Kemper's motion.

**I.  St. Paul's Motion for Summary Judgment (Ct. Rec. 32) & Robideaux Defendant's Motion for Summary Judgment on Claims by and Against St. Paul (Ct. Rec. 49)**

St. Paul and Robideaux filed what are in essence cross-motions for summary judgment regarding what coverage and duties are owed under an insurance policy issued by St. Paul to Robideaux.  Specifically, St. Paul asks the Court to find as a matter of law:

> (1) St. Paul did not and does not have a duty to defend or to indemnify Robideaux in the Federal Litigation[1] because Robideaux failed to notify St. Paul of the claims in that Lawsuit while the St. Paul policy was in effect;
> (2) St. Paul did not and does not have a duty to defend or indemnify Robideaux in the Federal Litigation because all claims against Robideaux in the Federal Litigation are specifically excluded from coverage by the St. Paul policy;
> (3) St. Paul did not breach the insurance contract issued to Robideaux;
> (4) St. Paul did not act in bad faith by denying a defense and coverage in the Federal Litigation after receiving first notice of that lawsuit in April 2003, more than two years after its policy expired; and

---

[1]    In the pleadings filed in connection with these motions, the Federal Litigation is actually referred to as the "Bond Litigation" and the State Litigation is referred to as the *Walker* Litigation."    The Court utilizes the phrases "Federal Litigation" and "State Litigation" for consistency purposes.

ORDER ~ 2

(5) St. Paul owes nothing to Robideaux or the City and dismissal of Defendants' counterclaims against St. Paul is appropriate.

In response, Robideaux seeks (1) a declaration that St. Paul owed duties to indemnify and to defend Robideaux with respect to the City of Spokane's claims asserted in the Federal Litigation and (2) entry of summary judgment in favor of the City of Spokane on the City's breach of contract counterclaim.  As set forth below, the Court finds the St. Paul Policy provides coverage for the City's claims raised against Robideaux in the Federal Litigation because Robideaux timely made and reported the City's Federal Litigation contribution claim given that it was related to the State Litigation claims and because the securities claim exception does not apply.

**A.   Brief Factual Statement**[2]

The parties entered into a claims-made insurance policy (hereinafter referred to as, "St. Paul Policy") providing coverage from February 7, 2000, to February 7, 2001.  (Ct. Rec. 86 ¶ 1.)  In July 2000, Robideaux was sued in state court by the City, in addition to a number of other Defendants ("the State Litigation").  *Id.* ¶ 2.  Robideaux provided notice

---

[2]   These are the barest skeletal facts, which are taken from the parties' Undisputed Facts submission (Ct. Rec. 86).  Many more facts will be added in conjunction with the analysis of particular issues which will add much flesh to this brief factual background.  A recitation here of all of the pertinent facts which bear on the issues being decided in this Order would make little sense without providing context provided by the subsequent analysis.

ORDER ~ 3

of this lawsuit to St. Paul on February 7, 2001, by way of a "Claim Report"; there is no dispute that the report of the State Litigation was timely. *Id.* ¶¶ 8 & 9.  In April 2001, the City asserted a contribution claim against Robideaux in the Federal Litigation. *Id.* ¶¶ 16 & 17. Robideaux requested coverage for the City's Federal Litigation contribution claim; St. Paul denied coverage. *Id.* ¶ 23.

**B.  Standard**

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).  The party seeking summary judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c).  In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Worker's Intern. Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982).  The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213.  "[A] mere 'scintilla' of evidence will be insufficient to

ORDER ~ 4

defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

**C.   Applicable Law and Analysis**

As a federal court sitting in diversity jurisdiction, the Court utilizes Washington law to interpret the St. Paul Policy as it was entered into in Washington. *See Fed. Ins. Co. v. Scarsella Brothers, Inc.*, 931 F.3d 599, 603 (9th Cir. 1991).  Under Washington law, construction of an insurance contract is a question of law. *Kitsap County v. Allstate Ins. Co.*, 136 Wash. 2d 567 (1998).  The entire policy is to be construed together to give force and effect to each provision, while giving the policy a "fair, reasonable and sensible construction, in a manner consistent with the way an average person purchasing insurance would understand the policy language." *E.Z. Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash. 2d 901, 907 (1986); *Wash. Public Util. Dists. Utils. Sysm. v. Public Util. Dist. No. 1 of Clallam County*, 112 Wash. 2d 1, 10 (1989); *Valley Furniture & Interiors, Inc. v. Transport. Ins. Co.*, 107 Wash. App. 104, 107 (2001). Construction of the policy should be consistent with the apparent intent and objectives of the parties; it should not be construed in a manner to lead to an absurd conclusion, or render the policy nonsensical or ineffective. *E.Z. Loader Boat Trailers, Inc.*, 106 Wash. 2d at 907.

Here, the primary issues are whether under the St. Paul Policy the "claim" for the Federal Litigation was both timely "made" and "reported."

ORDER ~ 5

St. Paul submits it was not; while Robideaux maintains it was.  The policy is a "claims made" policy and specifies:

**<u>When This Agreement Covers</u>**

**During this agreement or the limited reporting period.** We'll apply this agreement to claims or suits for covered loss . . . only when they're:

- first *made* or brought against a protected person while this agreement is in effect; *and*
- first *reported* to us or our program administrator while this agreement is in effect, or during the limited reporting period, if it applies.

We'll also apply this agreement to any covered act or event first reported to us while this agreement is in effect, or during the limited reporting period, if it applies.

(Bolding and underlining emphasis in original; italics emphasis added.)

    1.   <u>The Claim was Timely Made</u>

    The St. Paul Policy defines "claim" as "a demand that seeks damages" and provides:

**When we consider a claim or suit to be first made or brought.** We'll consider a claim or suit to be first made or brought against a protected person on the date that any protected person first receives written notice of that claim or suit.

We'll also consider all claims or suits for covered loss caused by an act, or series of related acts, to have been made or brought on the date that the first of those claims or suits is first made or brought.

*Series of related acts* means two or more acts, including repeated or continuous acts, that are related to the same loss.

(All emphasis in original.)  St. Paul contends the claims raised in the Federal Litigation were not made until the Federal Litigation was filed on April 24, 2001, which occurred after the St. Paul Policy had expired on February 7, 2001.  In response, Robideaux maintains there is coverage for the City's contribution claim in the Federal Litigation because (1) it was a "claim or suit" made during the Policy period or, alternatively,

ORDER ~ 6

(2) it was a "claim or suit" made after the Policy period but which was related to an earlier covered claim or suit.

      a.   *Claim*

The Court finds the City's State Litigation allegations against Robideaux at the time the Claim Report was submitted to St. Paul included a "demand that [sought] damages;" therefore, the definition of "claim" in the St. Paul Policy is satisfied.

      b.   *"That Claim or Suit"*

The first above-quoted St. Paul Policy paragraph states that a claim will be considered made when Robideaux received written notice of *"that* claim or suit." (Emphasis added.) Here, Robideaux received notice of the State Litigation in July 2000 and notice of the Federal Litigation on April 24, 2001. Clearly, the State Litigation claim was brought against Robideaux during the policy period of February 7, 2000, to February 7, 2001. However, Robideaux is not seeking coverage for the State Litigation claim - as such was voluntarily dismissed by the City when the Federal Litigation was filed by the bondholders; rather, Robideaux seeks coverage for the contribution claim asserted by the City in Federal Litigation. The Court finds this first Policy paragraph inapplicable given the use of the phrase *"that* claim or suit." The use of the term "that" indicates a reference to a specific demand for damages. The City did demand damages from Robideaux in both lawsuits; however, the demands, although premised upon similar facts, were based upon differing legal arguments - the Federal Litigation arguments being more expansive. Accordingly, the Court finds the City's contribution claim in the Federal Litigation is not "that claim" in the State Litigation. Therefore,

1  Robideaux did not receive notice of "that [contribution] claim" during

2  the policy period.

3          c.    *"Series of Related Acts"*

4      The next question is whether the claim was timely made under the

5  policy language that St. Paul will "consider all claims or suits for

6  covered loss caused by an act, or series of *related* acts, to have been

7  made or brought on the date that the first of those claims or suits is

8  first made or brought." (Emphasis added.)   In order to make the

9  determination of whether the City's contribution claim in the Federal

10  Litigation was caused by an act or series of related acts to the State

11  Litigation, case law shows that it is critical to look not at the label

12  affixed to the causes of action in the lawsuits, but rather look at the

13  underlying factual basis for the lawsuits. *See Cont'l Cas. Co. v. Wendt*,

14  205 F.3d 1258 (11th Cir. 2000); *Gregory v. The Home Ins. Co.*, 876 F.2d

15  602, 606 (7th Cir. 1989).  Also, "related" is not an ambiguous term and

16  can encompass both casual and logical connections. *Valley Furniture &*

17  *Interiors, Inc. v. Transp. Ins. Co.*, 107 Wash. App. 104, 108 (2001).

18      The City's First Amended Complaint in the State Litigation alleged,

19  in pertinent part:

20      28. Neither the Developers, Robideaux nor Walker ever disclosed
    to the City either Walker's prior relationship with the

21      Developers and Robideaux or the existence of the prior study
    performed for the Developers and Robideaux.

22      29. By mid-October 1996, the Developers and Robideaux had
    persuaded various city officials to adopt a highly unusual

23      valuation methodology that would more than double the bonds
    that would be required to acquire, renovate and expand the

24      garage.
    30. The net operation revenues from the Walker Feasibility

25      Analysis were the primary vehicle through which the "doubling"
    was accomplished.

26                    . . .

57. By February 1, 2000, the financial condition of the Parking Authority had become shockingly clear . . . parking revenues could not come close to covering (1) debt service on the Foundation's bonds; (2) the Garage's operating and maintenance account; and (3) the ground lease payments charged by the Developers.

58. The Foundation's bonds have been downgraded twice because Garage revenue was not adequate to cover debt service on the $31.5 million bonds issued by the Foundation the Developers established to acquire the Developer's Garage. By mid-June 2000, it had become apparent that the situation was not likely to improve in the near future. . . No one has claimed that the City has any responsibility for the debt service, which is specifically precluded by Ordinance C31823.

. . .

61. The operating revenue projected by [Keyser-Marston Associates, in April 2001] was much less than the revenue projected in the Walker Feasibility Analysis, but approximately the same as projections Walker had made for Robideaux before Walker was hired by the City. . .

. . .

95. Walker, Robideaux and perhaps various John Does and Jane Does conspired to withhold the prior relationship between Walker and Robideaux and to conceal the existence of the report produced during that relationship.

96. The Developers, Walker, Robideaux and perhaps various John Does and Jane Does conspired to persuade the City to adopt a methodology incorporating the Walker projections that would result in an "appraised value" that was more than twice the fair market value of the existing structure and the agreed upon renovation and expansion of that structure.

97. Defendants Walker, Robideaux, the Developers and perhaps various John and Jane Does agreed to enter into this conspiracy in order to obtain public funds for private purposes.

(Ct. Rec. 35: Warren Decl. Ex. C.)    Based on these alleged facts, the City asserted four causes of action against Robideaux in the State Litigation: (1) civil conspiracy, (2) quantum meruit, (3) accounting, and (4) declaratory judgment regarding Ordinance C31823.  One of the requests for relief sought by the City was "[a]warding Plaintiff damages in an amount to be proved at trial." *Id.* p. 28 ¶ 5.

On April 24, 2001, the Federal Litigation was initiated by U.S. Bank, John Nuveen & Company, and other mutual funds that had invested in the Garage bonds related to the financing of the RPS Project against a

ORDER ~ 9

number of defendants, including Robideaux, alleging state and federal securities fraud, common law fraud, and common law negligent misrepresentation in connection with the sale of the Garage bonds. (Ct. Rec. 86 ¶ 16.) On this same day, the City answered this complaint and cross-claimed against Robideaux and other defendants. *Id.* ¶ 17. The City's cross-claims included a request for contribution against these co-defendants in the event the City was held liable to the investor-plaintiffs in the Federal Litigation. *Id.* ¶ 20.

St. Paul makes much of the fact that the State Litigation did not include either securities fraud allegations or the bondholders. However, the St. Paul Policy does not require that the causes of action in differing lawsuits be the same or even similar; rather what is critical is that the claims or suits be caused by an act or series of related acts. Although the factual allegations in the two lawsuits are not identical, the City argued in both lawsuits that Robideaux acted wrongfully by failing to disclose to the City that Robideaux had a prior relationship with Walker and the Developers and that, due to this undisclosed relationship or "conspiracy," they encouraged the City to sell over-inflated municipal bonds. The claims and suits were clearly caused by a series of related acts; accordingly, St. Paul was on notice that securities fraud claims were likely in the future, especially since the Claim Report disclosed that U.S. Bonds had filed a motion to intervene. Therefore, the Court finds the claims brought by the City against Robideaux in the State Litigation and in the Federal Litigation were caused by a series of related acts and thus the City's contribution claim in the Federal Litigation is to be considered "made or brought on

the date" that the State Litigation claim was made, i.e. in July 2001, within the St. Paul Policy period.  Thus, the Court finds the claim was timely made.  *See Cont'l Cas. Co.*, 205 F.3d at 1264; *Harbor Ins. Co. v. Arthur Andersen & Co.*, 149 Ill. App. 3d 235, 237-38 (1986).

        2.    The Claim was Timely Reported

        In order for coverage to exist under the St. Paul Policy, Robideaux must also have satisfied the "timely reporting" requirement.  The Policy's "reporting" provisions state:

> **When we consider a claim or suit to be first reported to us:**
> We'll consider a claim or suit for covered loss . . . to be first reported to us on the date that we or our program administrator first receive a written notice from any protected person of a claim or suit made or brought against a protected person.
>
> **When we consider an act or event to be first reported to us.**
> We'll consider a covered act or event to be first reported to us on the date that we first receive written notice of an act or event from any protected person.  However, we won't accept such a notice unless it also describes what loss may result from the act or event.

(Emphasis in original.)

            a.    *"Claim or Suit"*

        Robideaux notified St. Paul of the State Litigation on February 7, 2001, through its agent John Pearl via the Claim Report.  (Ct. Rec. 86 ¶ 8 & 9.)  Because the Court found, as set forth above, that the City's contribution claim against Robideaux in the Federal Litigation was not "*that* claim or suit," the Court finds Robideaux did not timely report the City's contribution claim to St. Paul under the "*that* claim or suit" reporting requirement given that the City's contribution claim was not reported to St. Paul until April 4, 2003 - well after the February 7, 2001, expiration (and any 60 day limited extended reporting period).

1          b.    *"Act or Event"*

2        Because the Court finds the claim was timely made under the "series
3   of related acts" provision, the second portion of the "reporting"
4   provision applies:  "We'll consider a covered act or event to be first
5   reported to us on the date that we first receive written notice of an act
6   or event from any protected person.  However, we won't accept such a
7   notice unless it also describes what loss may result from the act or
8   event."  Robideaux submitted the Claim Report to St. Paul on February 7,
9   2001, which included (1) an Appendix providing background on the claim
10  and related litigation, and requesting consideration of Robideaux's claim
11  under the Policy, (2) the First Amended Complaint in the State Litigation
12  (minus the exhibits), (3) Robideaux's Opposition to Motion for Default,
13  and (4) Order on default in the State Litigation.   The Court finds the
14  contents of this Claim Report were sufficient to serve as "written notice
15  of an act or event . . . [which] describes what loss may result from the
16  act or event."   In addition, the factual allegations in the State
17  Litigation complaint were sufficient to put St. Paul on notice that the
18  City may seek recovery from Robideaux for any and all loss it incurred
19  as a result of the issuance of the municipal bonds.   Even though the
20  bondholders were not involved in the litigation, the Claim Report
21  notified St. Paul that U.S. Bonds had filed a Motion to Intervene.

22       The Court does not find *KPFF, Inc. v. California Union Insurance
23  Co.*, 56 Cal. App. 4th 963 (1997), which was relied upon by St. Paul,
24  controlling.  Because the Court finds the City's claims against Robideaux
25  in the State Litigation were related to the City's contribution claim
26  against Robideaux in the Federal Litigation, the Court concludes there

was a reasonable basis for St. Paul upon receiving the Claim Report in February 2001 to believe that the City's damages would include losses related to the overinflation of the Garage bonds.

Accordingly, the Court finds coverage is provided by the St. Paul Policy for the City's contribution claim against Robideaux in the Federal Litigation because it was timely made and timely reported.  Therefore, **St. Paul's motion is denied in part** and **Robideaux's motion is granted in part**.

> 3.    The Securities Fraud Exclusion Does Not Apply

St. Paul argues the Policy's securities fraud exclusion applies because the bondholder plaintiffs in the Federal Litigation alleged securities fraud causes of action, relying in large measure on *Bendis v. Federal Insurance Co.*, 958 F.2d 960 (10th Cir. 1992).  The Court finds the exclusionary language in *Bendis* is much broader than that in the St. Paul Policy, which reads:

> We won't cover loss that results from any violation of:
> - the Securities Act of 1933 as amended;
> - the Securities Exchange Act of 1934 as amended
> - any State Blue Sky or Securities Law or similar state or federal statute or regulation.

Given the narrower language of the St. Paul Policy exclusion, the Court finds the exclusion does not apply.  There was never a finding that any of these securities laws were violated.  Furthermore, this Court held as a matter of law in *In re RPS* (EDWA Cause No. CV-01-0127-EFS) that Asset Guaranty Insurance Company had no standing to assert any securities law claim and thus, at the time of Robideaux's settlement with the City, the City's only contribution claim arising from its settlement with Asset Guaranty was for negligent misrepresentation.  Therefore, the City's

ORDER ~ 13

1  contribution claim does not involve any losses resulting from a violation

2  of the listed securities laws.  Accordingly, the Court **denies St. Paul's**

3  **motion in part**.

4      4.  <u>Bad Faith and Coverage by Estoppel</u>

5      St. Paul asked for summary judgment on the issue of bad faith.

6  After hearing the Court's ruling regarding coverage issues, St. Paul

7  agreed that bad faith issues would be more appropriately addressed at a

8  later date (Ct. Rec. 88); accordingly, the Court **denies these portions**

9  of **St. Paul's motion with leave to renew**.

10     Robideaux had also raised the alternative argument of coverage by

11 estoppel due to St. Paul's alleged bad faith.  Following the Court's oral

12 rulings, Robideaux agreed that its coverage by estoppel argument was

13 moot.  Accordingly, the Court **denies as moot Robideaux's motion in part**.

14 **II.  KEMPER CASUALTY INSURANCE CO.'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT AND CROSS COMPLAINANT RWR MANAGEMENT, ET AL. (Ct.**

15 **Rec. 42)**

16     At the hearing, because the Court found coverage existed under the

17 St. Paul policy for the City's contribution claim in the Federal

18 Litigation, the parties agreed Kemper's motion, which asked the Court to

19 dismiss Robideaux's claims for breach of contract and declaratory relief

20 related to policy no. QT-012738-00, effective February 7, 2001, to

21 February 7, 2002, should be granted.  Accordingly, Kemper's motion is

22 **granted**.

23     For the above-given reasons, **IT IS HEREBY ORDERED:**

24     1.  St. Paul's Motion for Summary Judgment **(Ct. Rec. 32)** is **DENIED**

25 **IN PART** (claim was timely made and reported and securities law exclusion

26

ORDER ~ 14

1  does not apply) **and DENIED WITH LEAVE TO RENEW IN PART** (bad faith

2  issues).

3      2.   Robideaux's Motion for Summary Judgment on Claims by and

4  Against St. Paul **(Ct. Rec. 49)** is **GRANTED IN PART** (St. Paul owed a duty

5  to indemnify and defend Robideaux with respect to the City's contribution

6  claim asserted in the Federal Litigation because the claim was timely

7  made and reported) and **DENIED AS MOOT IN PART** (coverage by estoppel).

8      3.   Kemper's Motion for Summary Judgment Against Defendant and

9  Cross Complainant RWR Management, et al. **(Ct. Rec. 42)** is **GRANTED**.

10      **IT IS SO ORDERED.**   The District Court Executive is directed to file

11  this Order and provide copies of this Order to counsel.

12      **DATED** this  13th    day of November 2006.

13

14             S/ Edward F. Shea
                EDWARD F. SHEA
15          United States District Judge

16

17  Q:\Civil\2005\0294.coverage.msjs.wpd

18

19

20

21

22

23

24

25

26

ORDER ~ 15